IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

H. F. SALSBERY,

            Plaintiff,

v.                                              CIVIL ACTION NO.   2:13-cv-26419

VERIZON WIRELESS (VAW), LLC, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Cellco Partnership d/b/a Verizon Wireless's ("Verizon") Motion to Dismiss and to Compel Arbitration [Docket 8], Motion to Suspend Deadlines Pending Resolution of its Motion to Compel [Docket 19], and Motion for a Protective Order to Stay Discovery [Docket 28]. The decisive issue before me is whether the parties' arbitration agreement, if entered into by the parties, applies to the plaintiff's claim that Verizon's debt collection methods were unlawful. I conclude that the arbitration agreement is narrow in scope and does not encompass the plaintiff's claim. Therefore, the plaintiff cannot be compelled to arbitrate. For these reasons, Verizon's motion to dismiss and compel arbitration [Docket 8] is **DENIED**. Verizon's motions to suspend deadlines [Docket 19] and for a protective order to stay discovery [Docket 28] are **DENIED as moot**.

    **I.**    **Background**

The parties dispute whether the plaintiff should be compelled to arbitrate his claims concerning Verizon's allegedly unlawful debt collection practices. Verizon argues that the plaintiff agreed to arbitrate his claims and that the arbitration agreement is valid and enforceable.

The plaintiff counters that there is a factual dispute regarding whether the parties validly incorporated the arbitration agreement by reference. However, the dispositive issue is whether the arbitration agreement, even if entered into by the parties, applies to the parties' dispute. I conclude that the parties' dispute falls outside the scope of the arbitration agreement, and thus the plaintiff cannot be compelled to arbitrate.

On February 26, 2010, the plaintiff, H.F. Salsbery, visited Cell Phones, Verizon's authorized retailer, to upgrade his cell phone equipment and extend his two-year cellular service contract. (*See* Customer Receipt [Docket 8-2], at 1). Verizon alleges that a document, the Customer Agreement, was incorporated by reference into the parties' contract. The Customer Agreement, attached by Verizon to its motion to dismiss and compel arbitration, provides in relevant part:

> **You and Verizon Wireless both agree to resolve disputes only by arbitration or in small claims court. There's no judge or jury in arbitration, and the procedures may be different, but an arbitrator can award the same damages and relief, and must honor the same terms in this agreement, as a court would. If the law allows for an award of attorneys' fees, an arbitrator can award them too. We also both agree that:**
>
> (1) *The Federal Arbitration Act applies to this agreement.* Except for small claims court cases that qualify, *any dispute that results from this agreement or from the Services you receive from us (or from any advertising for any products or Services) will be resolved by one or more neutral arbitrators* before the American Arbitration Association ("AAA") or Better Business Bureau ("BBB"). You can also bring any issues you may have to the attention of federal, state, or local government agencies, and if the law allows, they can seek relief against us for you.
>
> . . . .
>
> Except where we've agreed otherwise elsewhere in this agreement, *this agreement and any disputes covered by it are governed by the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws rules of that state.*

(Customer Agreement [Docket 8-3], at 4-5) (italics added).

On October 22, 2013, the plaintiff filed suit against Verizon, Verizon Wireless (VAW), LLC, and John Doe Collection Agency in this court. (*See generally* Compl. [Docket 1]). In his complaint, the plaintiff alleges that the defendants violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-1, *et seq.* (*Id.* ¶¶ 31-104). The plaintiff alleges the defendants violated these statutes by making unauthorized robotic calls to his cellular phone to collect a debt on his Verizon account. (*See id.*).

In response, Verizon moved to dismiss and compel arbitration based on the Customer Agreement's arbitration clause. Verizon argues that the arbitration clause requires that these matters be brought in an arbitral forum. In addition, Verizon moved to stay all deadlines and discovery in this case pending my resolution of its motion to dismiss and compel arbitration. The plaintiff contends that Verizon's motions should be denied to permit limited discovery into whether the parties formed a valid and enforceable agreement to arbitrate.

## II. Discussion

### A. Legal Standard

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004); *see also Minter v. Freeway Food, Inc.*, No. 103CV00882, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004) ("Decisions in other circuits have uniformly held that 'in the context of motions to compel arbitration brought under the Federal Arbitration Act (FAA) . . . courts apply a standard similar to that applicable to a motion for summary judgment.'" (quoting *Bensadoun v.*

3

*Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "Whether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings." *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012).

It is clear I cannot resolve this dispute based solely on the complaint. Although the complaint states the plaintiff "acquired cellular phone service pursuant to a service contract with defendant(s)," the complaint does not mention that the parties entered into an agreement to arbitrate. (Compl. [Docket 1] ¶ 9). In addition, the plaintiff did not attach the Customer Agreement to the complaint. (*See generally id.*). Because I have to look to documents outside the pleadings to resolve Verizon's motion to compel arbitration, I must review the motion under a summary judgment standard.

When a court treats a motion to dismiss as a motion for summary judgment, the court must give the parties notice of the conversion and must provide the parties a "reasonable opportunity for discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Id.* Both parties were aware that non-pleading materials were before me because they both filed exhibits in connection to Verizon's motion to compel. Therefore, the parties received notice of the possible conversion of Verizon's motion.

In addition, an adequate opportunity for discovery has been afforded in this case. First, although the plaintiff has asked for additional discovery, his request relates to whether the parties entered into an agreement to arbitrate. As will be discussed below, even if the parties entered into an agreement to arbitrate, that agreement does not encompass the parties' dispute. Therefore, this

4

discovery has no bearing on the dispositive issue in this case. Second, Verizon has not sought discovery beyond the plaintiff's initial disclosures, even though discovery has been open for more than three months. (*See* Scheduling Order [Docket 23]). In fact, Verizon has moved to prevent any further discovery in this case. Therefore, I will consider and rule on Verizon's motion under the summary judgment standard.

Under this standard, the party moving to compel arbitration has the initial burden of demonstrating that there are no genuine issues of material fact and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After the moving party has done this, the burden shifts to the nonmovant to demonstrate that a genuine issue of material fact exists for trial. A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Analysis

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements . . . [and] create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The goal of the FAA is to place arbitration contracts "on an equal footing with other contracts . . . and enforce them according to their terms[.]" *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S. Ct. 1740, 1745-46 (2011) (citations omitted). Under section 4 of the FAA, a party to an arbitration agreement may seek an order compelling arbitration. The Fourth Circuit has described four factors that will support a motion to compel arbitration: "(1) the existence of a dispute between the parties,

5

(2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). In considering these factors, a district court must be "mindful of the 'clear federal directive in support of arbitration.'" *Id.* at 500 (quoting *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001)).

The first, third, and fourth factors are satisfied here. A dispute exists between the parties, as evidenced by the complaint, and it is clear the plaintiff refuses to arbitrate. In addition, it is well established that cellular phones are instrumentalities of interstate commerce. *See, e.g.*, *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007); *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997). At issue in this case is the second factor—whether the parties entered into a valid and enforceable agreement to arbitrate and whether that agreement covers the parties' dispute. I conclude that even if the parties entered into a valid arbitration agreement, the plaintiff's claims are not within the scope of that agreement.

The instant dispute arose after the plaintiff refused to pay for services he claims were not included in the original contract. In response, Verizon assigned his debt to an unnamed collection agency, which began harassing the plaintiff with robotic calls. The plaintiff alleges that the collection agency's use of robotic calling, without prior consent from the plaintiff, violated 47 U.S.C. § 227. This section of the TCPA makes it unlawful to make artificial pre-recorded calls to any telephone number for which the called party is charged. *See id*.

The plaintiff also contends that this activity violates the WVCCPA. *See* W. Va. Code § 46A-2-125. Section 46A-2-125 of the WVCCPA prohibits debt collectors from "unreasonably

6

oppress[ing] or abus[ing] any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another." *Id.* The section identifies conduct that violates the WVCCPA, such as placing telephone calls without revealing the caller's identity and causing a telephone to ring or engaging a person in a telephone conversation continuously with the intent to annoy, harass, or threaten the person at the called number. *See id.*

The United States Supreme Court has recognized "a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone*, 460 U.S. at 24. However, this federal enthusiasm for arbitration agreements is not without bounds. The FAA's liberal policy in favor of arbitration does not imbue arbitration agreements with special powers. Rather, the goal of the FAA was "to make arbitration agreements as enforceable as other contracts, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added).

The Court has declared that its holdings "cannot be divorced from the first principle that underscores all of [its] arbitration decisions: Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration[.]" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original) (citations and quotations omitted). The Court has never held that the FAA's liberal policy "overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Therefore, although the FAA strongly favors arbitration, "the duty to arbitrate remains one assumed by contract[.]" *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993); *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172-73 (3d Cir.

7

2014) ("The presumption in favor of arbitration does not 'take [ ] courts outside [the] settled framework' of using principles of contract interpretation to determine the scope of an arbitration clause." (quoting *Granite Rock*, 561 U.S. at 302)). Unless the arbitration agreement is ambiguous, "the plain language of the contract controls." *Id.* at 173. However, if a court has any doubts concerning the scope of arbitrability, those doubts "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 25.

With this admonition in mind, courts often classify arbitration provisions as either broad or narrow, depending on the particular language used. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). Two of the Supreme Court's decisions in the *United Steelworkers* trilogy appear to be the genesis of this distinction. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585 (1960) (reasoning that "forceful evidence of a purpose to exclude" is necessary where the arbitration agreement's provisions were broad, but its exclusion clause was vague); *see also United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 572-73 (1960) (Brennan, J., concurring) (noting that the outcome in *Warrior*—finding parties' dispute over employer contracting work out was arbitrable—may have been different if "the arbitration clause [was] very narrow, or the exclusion clause quite specific").

Subsequent jurisprudence has fleshed out this distinction. These cases indicate that the strong presumption of arbitrability applies exclusively to broad arbitration agreements. *See, e.g.*, *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005) ("When an arbitration clause is narrowly drawn, the policy in favor of arbitration does not have the strong effect here that it would have if we were construing a broad arbitration clause.") (quotations

8

omitted); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) ("Where the arbitration clause is broad, there arises a presumption of arbitrability[.]") (quotations omitted); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) ("[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability[.]").

The same rule of construction does not apply to narrow arbitration agreements. Instead, a narrow arbitration agreement provides the court more latitude to determine whether the dispute "falls within the purview of the clause" or involves an issue that is collateral to the main agreement. *See Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990) (noting that the Second Circuit has "permitted courts greater latitude in determining whether the dispute falls within the purview of the [arbitration] clause"); *see also Louis Dreyfus*, 252 F.3d at 224 (stating collateral matters are generally beyond the purview of narrow arbitration agreements).

The Fourth Circuit has acknowledged the distinction between broad and narrow arbitration agreements. *See Am. Recovery Corp.*, 96 F.3d at 92-93. In the Fourth Circuit, when an arbitration clause is narrow, only disputes that "relat[e] to the interpretation and performance of the contract itself" may be submitted to arbitration. *Id.* If the arbitration clause is broad, disputes that have a "significant relationship" to the parties' contract will be sent to arbitration, "regardless of the label attached to the dispute." *Id*. at 93. (quotations omitted).

Turning to the instant dispute, the parties' arbitration agreement applies to "any dispute that *results from* this agreement or from the Services you receive from us (or from any advertising for any products or Services)[.]" (Customer Agreement [Docket 8-3], at 4) (emphasis added). While the Fourth Circuit has not interpreted the language "results from" as it relates to arbitration

9

agreements, it has construed the language "arising under [this agreement]" as embodying a narrow arbitration clause and "arising under or relating to" as a broad arbitration clause. *Am. Recovery Corp.*, 96 F.3d at 93. The "results from" language in the parties' agreement is very like the narrow "arising under" clause. In fact, *Black's Law Dictionary* notes that the word "arise" is synonymous with "result (from)." *Black's Law Dictionary* 115 (8th ed. 2004). I therefore **FIND** that the clause at issue here is narrow.

As the Fourth Circuit has acknowledged, a narrow arbitration clause only encompasses disputes that *relate* to the interpretation or performance of the contract. Therefore, "but for" causation does not work as a definitional basis for the "results from" language. If the unnamed collections agency in this case telephonically harassed a Verizon customer until he suffered a fatal heart attack, a "but-for" test would compel the victim's family to submit their wrongful death claim to arbitration. But that would be patently absurd. The victim's death would have resulted from the overzealous and illegal tactics of the agency, not the cell phone contract between Verizon and the customer. As such, I conclude that the arbitration clause will only apply to disputes that relate to the interpretation and performance of the parties' contract, and not disputes for which the contract was merely a "but for" cause.

When an arbitration clause is narrowly written, the dispute must have arisen directly from the contract, not from some other wrong. That is not the case here. The plaintiff's claim does not result from or arise under the contract. The gravamen of the plaintiff's claims is the illegality of the defendants' debt collection methods. The plaintiff has not filed suit to contest the debt he allegedly owes to Verizon. Rather, the plaintiff takes issue with the illegal means used to collect the debt. The manner in which the debt was collected has nothing to do with the parties' contractual

relationship. Simply, this dispute results from the illegality of the calls and not the contract. Accordingly, I **FIND** the arbitration clause does not encompass the plaintiff's claims and therefore the plaintiff cannot be compelled to arbitrate them. As the arbitration agreement, if it exists, does not apply to the parties' dispute, I **DENY** Verizon's motion to compel arbitration. Because the parties will not be compelled to arbitrate these claims, Verizon's motions to suspend deadlines and for a protective order to stay discovery are **DENIED as moot**.

### III. Conclusion

For the reasons discussed above, Verizon's motion to dismiss and compel arbitration [Docket 8] is **DENIED.** Verizon's motions to suspend deadlines [Docket 19] and for a protective order to stay discovery [Docket 28] are **DENIED as moot**.

The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: August 7, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE